1810.

Wood
vs
Repold.

particularly described as being condemned for building a water-mill, &c. dated the 12th of April 1763. The plaintiff then proved, that the land described on the plots in the cause was, at the time of the execution of the writ of *ad quod damnum*, unimproved, and covered with timber, and other trees, and that the defendant applied the same to other purposes than for the use or support of the mill or houses, or any thing thereunto appertaining; that he grubbed and cleared it, and put it in cultivation by planting corn and sowing wheat. On this evidence the defendant prayed the court to direct the jury, that the plaintiff ought not to recover, and that he, the defendant, was not guilty of waste, but was justifiable under the writ of *ad quod damnum*, and the grant made in pursuance of it, in clearing and using the land in the way as proved by the plaintiff. But the county court, [*Done* and *Robins*, A. J.] refused so to direct the jury, but on the contrary directed them that the plaintiff was entitled to recover; that the defendant was guilty of the waste complained of, and was not justifiable, under the writ of *ad quod damnum*, and the grant made by virtue of the same, in clearing and cultivating the land as aforesaid. The defendant excepted. Verdict and judgment for all that part of the land included within the letters, *R*, &c. wherein the waste and destruction was committed, &c. and £112 10 0 current money, damages assessed, and costs. The defendant appealed to this court.

The cause was argued at June term 1808, before TILGHMAN, BUCHANAN, NICHOLSON, and GANTT, J. by

*J. Bayly*, for the Appellant; and by

*Martin, W. B. Martin* and *Whittington*, for the Appellee.

JUDGMENT REVERSED.

---

WOOD vs. REPOLD.

DECEMBER.

APPEAL from *Baltimore* County Court. This was an action of *assumpsit*. The declaration contained two

A subsequent endorser of a bill of exchange, discounted for the accommodation of the drawer, can, in an action of *assumpsit*, recover against a prior endorser, the whole amount recovered against him by, or by him paid to, the holder of the bill.

Such prior endorser, by his endorsement and delivery of the bill to the drawer, impliedly engaged to indemnify any person who should legally come to the possession of it, in case of default on the part of the drawer or drawee.

The endorsement, and delivery of the bill, by such prior endorser to the drawer, amounts, as to all subsequent parties, to an admission of a valid consideration; and such prior endorser cannot set up the want of a legal consideration between himself and any subsequent endorser.

1810.

Wood
*v̄*
Repold

*counts*, one on a *bill of exchange* drawn on the 6th of January 1802; by *Aquila Brown*, of *Baltimore*, on *Edward Goold*, and Son, of *New-York*, for $3780, and payable 60 days after date to *Wood*, (the defendant, now appellant,) by the name of *Gabriel Wood*, & Co, or order, which bill was endorsed by *Wood*, by the name of *G. Wood* & Co. payable to the plaintiff, *(Repold,)* and was, on the 10th of March 1802, presented to *Goold* and Son for payment, (the same having been accepted,) and payment being refused, the bill was on that day protested. The other count was for money laid out, expended and paid. The general issue was pleaded. The plaintiff at the trial gave in evidence that *Aquila Brown*, being a merchant, residing and carrying on commerce at *Baltimore*, did there draw the following bill of exchange on *Edward Goold*, and Son, of *New-York*, in favour of and payable to the defendant.

"*Baltimore*, January 6, 1802.
$3780.

Sixty days after date pay to the order of Messrs. *G. Wood*, & Co. thirty-seven hundred and eighty dollars, value received, which charge to account of

*A. Brown*, Junr.

Messrs. *Edwd. Goold* & Son, *New-York*."

*Endorsed.* "For value received pay the within to *George Repold*.

*Gabriel Wood*, & Co.
*George Repold*.

Accepted, *Edwd. Goold*, & Son."

The plaintiff also gave in evidence, that this bill was made by *Brown* for the sole purpose of being discounted to raise money for his own use; that for enabling him to raise money on it, the defendant, at the request of *Brown*, and for the purpose of enabling him to raise money on the bill, and without any other consideration, endorsed the bill in blank, by the name of *Gabriel Wood* & Co. on the day of the date of the bill, and immediately delivered it back, so endorsed, to *Brown*, but had at that time no knowledge or information that it was to be endorsed after him by the plaintiff, or that *Brown* intended to apply to the plaintiff to endorse it. That *Brown*, after receiving back the bill, so endorsed by the defendant, carried it on the same day to the plaintiff, and requested him to endorse it

1810.
Wood
vs
Repold.

after the defendant, for the purpose of giving it further credit, and of thereby enabling *Brown* to raise money on it for his own use and benefit; that the plaintiff, in compliance with this request, and for the purpose of giving additional credit to the bill, and of thereby assisting *Brown* to obtain the money on it, did endorse it in blank, and immediately delivered it back, so endorsed, to *Brown*, who soon afterwards procured it to be discounted, for his own use and benefit, by the Bank of *Baltimore*. That at the time of these endorsements no communication had taken place between the plaintiff and defendant respecting the bill or endorsements, or respecting any endorsements to be made by them, or either of them, for *Brown*, or for his use or benefit; and that the plaintiff received no consideration for his endorsement, except such as might arise in law from the previous endorsement of the defendant, and from the making of the bill by *Brown*; and that the bill was never delivered to the plaintiff by *Brown* or the defendant, except for the purposes aforesaid. The plaintiff also gave in evidence, that the bill, having been discounted by the Bank of *Baltimore*, was duly presented by that bank to the drawees, for acceptance and payment, and not having been accepted or paid was by them duly and regularly protested for non-acceptance and non-payment, of which protests notice was duly and legally given by the said bank to *Brown*, and to the defendant and the plaintiff; that payment of the bill was then demanded immediately by the bank from *Brown*, who failed to pay it; whereupon notice of such failure was given by the bank to the plaintiff and the defendant, and payment of the bill thereupon was demanded of them by the bank. The plaintiff further gave in evidence, that he and the defendant, being so called on for payment of the bill, did agree that each of them should pay one half of the sum due thereon, but that the right of the plaintiff to recover from the defendant, as prior endorsor of the bill, the sum so by the plaintiff to be paid, with interest, should not in any manner be affected by the said agreement; and that the plaintiff, in pursuance of the said agreement, did on the 20th of March 1802, pay to the bank the sum of $1890, being one half of what was then due on the bill. The defendant then prayed the court to direct the jury, that the plaintiff, if the jury should believe the facts so

offered in evidence by him, is not entitled in law to re-
cover in this action the amount paid by the plaintiff to the
bank. Which opinion the court, [*Nicholson* Ch. J.] re-
fused to give. The defendant excepted; and the verdict
and judgment being against him, he appealed to this court.

The cause was argued at December term 1809, before
CHASE, Ch. J. GANTT, and EARLE, J. and was reargued
at the present term before CHASE, Ch. J. POLK, BUCHA-
NAN, GANTT, and EARLE, J.

*Martin, Shaaff, W. Dorsey, Winder,* and *S. Chase,* jr.
for the Appellant, contended, 1. That as no consideration
was given or paid by *Repold* to *Wood* for the bill of ex-
change, *Repold* was not entitled to recover in this action.
2. That *Wood* and *Repold* were to be considered as co-se-
curities; and that where one surety paid, he might call on
the other to become contributory, and as *Wood* paid one
half of the bill, *Repold* was not entitled to recover the
other half of him. In support of the *first* principle, they
cited *Kyd on Bills,* 276. *Puget vs. Forbes & Gregory,*
1 *Esp. Rep.* 117. *Chitty on Bills.* 9, 50, 51, 181. *Evans's
Ess.* 103, *s.* 2. *Imp. M. P.* 391, 392. *Wats. on Part.* 240.
*Petrie vs. Hannay,* 3 *T. R.* 418, 421. *Ex Parte Lambert,*
13 *Ves.* 179. 1 *Com. on Cont.* 9 to 13. 1 *Esp. Dig.* 32.
*Pillans vs. Van Mierop,* 3 *Burr.* 1671. *Mansell vs. Bur-
ridge,* 7 *T. R.* 350. *Cowley vs. Dunlop,* 7 *T. R.* 571. *Gor-
gerat vs. M'Carty,* 2 *Dall. Rep.* 149. *Jeffries vs. Austin,*
1 *Stra.* 674. *Pearson vs. Garrett,* 4 *Mod.* 242; and *Grant
vs. Naylor,* 4 *Cranch,* 224.

3. The undertaking of the endorsors was, that if the
drawer or acceptor did not pay the bill, then the endor-
sors, as sureties, were to see it paid. *Evans's Ess.* 51.
1 *Lutw.* 888.

4. It is law, as well as equity, that if one surety paid,
he had remedy against the other for his contribution. *Ro-
gers vs. Mackenzie,* 4 *Ves.* 755. 2 *Com. on Cont.* 186, 190.
*Turner vs. Davies,* 2 *Esp. Rep.* 478. *Deering vs. The Earl
of Winchelsea,* 2 *Bos. & Pull.* 270. *Cowell vs. Edwards,*
*Ibid* 268. *Wright vs. Hunter,* 1 *East,* 20. *Child vs. Mor-
ley,* 8 *T. R.* 614. *Evans's Ess.* 51, 149. *Kyd on Bills,*
113, 114. *Master vs. Miller,* 4 *T. R.* 342; and *Pillans &
Rose vs. Van Mierop & Hopkins,* 3 *Burr.* 1663.

5. Where bills are not negotiated in the regular course of trade, notice is not necessary, and the strict principle is not applicable to them. *De Berdt vs. Atkinson*, 2 *H. Blk. Rep.* 337, *per Buller*, J.

6. The declaration is defective, in not stating that *Repold* had entitled himself to recover by having taken up the bill. 1 *Harr. Ent.* 290.

*Key, Harper, T. Buchanan, J. Bayly*, and *Boyd*, for the Appellee, contended, 1. That the last endorsor of a bill of exchange, by the law of merchants, can recover of his antecedent endorsors. They referred to 2 *Com. Cont.* 164, 188. *Rogers vs. Mackenzie*, 4 *Ves* 755. Sir *F. Deering's* case, 2 *Bos. & Pull.* 270. *Turner vs. Davies*, 2 *Esp. Rep.* 478. *Martindale's Lessee vs. Troupe*, 3 *Harr. & M'Hen.* 317, *Pinkney's* argument; and *Murray vs. Elibank*, 13 *Ves.* 8.

2. An accommodation bill of exchange is a mercantile transaction. They cited *French vs. Bank of Columbia*, 4 *Cranch*, 141, 156, 157. *Nicholson vs. Gouthit*, 2 *H. Blk. Rep.* 612. *Mallet vs. Thompson*, 5 *Esp. Rep.* 179. 1 *Esp. Dig.* 43, 46. *Simmonds vs. Parminter*, 1 *Wils.* 185. *Chitty on Bills*, 13; and *Encyclopedia*, tit. *Bills of Exchange.*

3. *Repold* and *Wood* were not joint sureties, and of course each of them was not bound to contribute one half, on the dishonour of the bill. They cited *Preston vs. Merceau*, 2 *W. Blk. Rep.* 1249, 1250. *Toussaint vs. Martinnant*, 2 *T. R.* 105. 2 *Com. Cont.* 174. *Peake's Evid.* 78. *Chitty on Bills*, 1, 2, 103, 112, 115, 116, 117, 118. *Peacoke vs. Rhodes, Dougl.* 636. *Russell vs. Langstaffe, Ibid* 516. *Heylen vs. Adamson*, 2 *Burr.* 674. *Smith vs. Knox*, 3 *Esp. Rep.* 48. *Smith vs. Clarke, Peake's N. P.* 225. *Parker vs. Kennedy*, 1 *Bay's Rep.* 416. *Nicholson vs. Gouthit*, 2 *H. Blk. Rep.* 612. *Atkins vs. Banwell*, 2 *East*, 506. *Seddons vs. Stratford, Peake's N. P.* 215; and *Kyd on Bills*, 89, 113.

4. The general position, that between the immediate parties to a bill of exchange the consideration may be gone into, is admitted; but the meaning of that general rule is not that the endorsee must have paid value to his *proximate* endorsor. They cited *Russell vs. Langstaffe, Doug.* 514. *Smith vs. Knox*, 3 *Esp. Rep.* 46, 47. *Mallet vs. Thomp-*

1810.

Wood
vs
Repold

1810.

Wood
vs
Repold

son, 5 Esp. Rep. 179. Scott vs. Lifford, 1 Campb. 246. Seddons vs. Stratford, Peake's N. P. 215. Bank of Columbia vs. French, 4 Cranch, 141. 1 Morg. Ess. 41, 42. Chitty on Bills, 9, 51, 181, 185. Evans's Ess. 104, s 2, 103, s. 2. Forth vs. Stanton, 1 Saund. 211 b. Puget vs. Forbes, 1 Esp. Rep. 117. Imp. M. P. 891, 892. Wats. on Part. 244. Ex Parte Lambert, 13 Ves. 179; and 1 Com. Cont. 2, 9, 13, 16.

5. As to the equity of the case, they cited Toussaint vs. Martinnant, 2 T. R. 105. Osborne vs. Rogers, 1 Saund. 264, (notes.) Underhill vs. Horwood, 10 Ves. 226; and Philips vs. Hunter, 2 H. Blk. Rep. 412.

Curia adv. vult.

BUCHANAN, J. at this term delivered the opinion of the court (a). Aquila Brown, a merchant of Baltimore, wishing to raise a sum of money, drew a bill of exchange on a house in New-York for $3780, in favour of Gabriel Wood and Company, at sixty days, and took it to Wood, who at his request, and without any consideration, but solely to enable him to raise money on the bill, endorsed it in blank, and returned it to Brown. Brown then took it to Repold, who also, at his request, but without consideration, and to give a further credit to the bill, endorsed it in blank, and delivered it back to Brown, who took it to the Bank of Baltimore, and got it discounted. No money consideration passed between Repold and Wood; there was no communication or understanding on the subject between them, nor had Wood any knowledge that Repold was to endorse after him. The bill was afterwards regularly protested for nonpayment. Whereupon, Repold paid one half of the amount to the Bank of Baltimore, and obtained possession of the bill, and then brought suit against Wood, as his endorsor, to recover back the sum so paid by him to the bank. The declaration contains two counts, the first, the common count on a bill of exchange by an endorsee against an endorsor; the other a money count for money laid out, expended and paid, for the use of Wood. It is objected that the plaintiff below is not entitled to recover, on two grounds—First. That he and Wood, by their endorsements, became co-securities for Brown, and was each to contribute his proportion. Second. That an endor-

(a) Polk and Gantt, J. concurred.

see cannot recover against his immediate endorsor, unless a money consideration passes at the time of the endorsement; and that in this case no money consideration did pass, the endorsement by each being only to enable *Brown* to raise money on the bill. If *Repold* and *Wood* could be considered as standing in the relation of co-securities for *Brown*, the first objection would be fatal; for in the capacity of co-security, *Repold* could not recover on the first count in the declaration, but must rely upon the money count, and having paid but one half of the amount of the bill in question to the Bank of *Baltimore*, he could not, on the second count, recover back from *Wood* the sum so paid, being only what he himself, as a co-security, would be bound to contribute. But I am at a loss to imagine on what principle *Wood* and *Repold* are to be viewed in the light of co-securities. There is no doubt, that two or more may jointly endorse a bill of exchange; and in such case, each would be bound to contribute his just proportion of the amount; but then the endorsement itself must be joint, and not several and distinct, or at least, to create between two successive endorsors a liability to contribution, there must be a correspondent understanding between them. But here the endorsement does not purport to be joint, or bear in itself any evidence of a joint understanding between the endorsors, nor does there, in any manner, appear to have been any such understanding between them; on the contrary, when *Wood* endorsed the bill there had been no communication between him and *Repold*, and he did not know, or even suppose, that *Repold* was to endorse it after him, and I can perceive no resemblance between their relative situation, and that of co-securities in a bond. Every man who signs an instrument of writing, is considered as understanding the nature of the obligation or contract into which he enters, and by his signature, subjects himself to the operation of the law governing such instruments. If two or more persons become securities for another in a bond, the *law* imposes upon them a joint undertaking or liability; and if one pays the debt of the principal, he may recover from each of the co-securities his aliquot proportion of the sum paid; and in such transactions, it is not necessary, to constitute a co-securityship, that they should all execute the bond at the same time, or that there should be an understanding between them; the nature of the in-

strument, and the law operating upon it, create the joint liability. Therefore, if one signs a bond, as security, at one time, not knowing who, or that any person is to come after him, and another signs it at a different time, *by operation of law* they are co-securities, and either who pays the whole, may call upon the other for his contribution. But not so with respect to the endorsors of a bill of exchange. Every endorsor is considered in law as a several and collateral security, and is as a drawer to his endorsee. An endorsement presupposses a consideration passing from the endorsee to the endorsor, and of necessity precludes the presumption of a joint undertaking; for the law is consistent, and both presumptions cannot stand together. But in the case of the securities in a bond, there is not only no presumption of any consideration moving from one security to the other, but the fact is directly contrary, and the very nature of the transaction excludes the idea. I cannot, therefore, entertain the first objection, but think, that the endorsements of *Wood* and *Repold* must be considered as several and successive, to be operated upon by the law regulating such transactions. Nor can I perceive that the second objection is better supported. The bill in question, though drawn and endorsed for the accommodation of the drawer, to enable him to raise money upon it, must be considered as if it had been made in the ordinary course of business, subject to all the law and incidents attending bills of exchange, endorsed and passed in a regular course of negotiation. The same principles of law, and the same rules of evidence, equally apply to both, and when so considered, the objection that *Wood* received no money consideration at the time of his endorsement, appears to me to have no weight. The position that, as between the immediate parties to a bill of exchange, as the drawer and acceptor, the payee and drawer, the endorsee and his immediate endorsor, the want of consideration is a sufficient defence to an action on the bill, is certainly a correct one, and extends to all bills of exchange, whether for accommodation, or otherwise. But that principle, when tested by the established practice and settled forms of proceedings in actions on bills of exchange, will, I think, be found applicable only to that particular stage of the negotiation at which the bill has stopped in the hands of the party suing, who having never passed it

away, has consequently been obliged to pay nothing upon it, nor has created any liability on himself to pay, and therefore can only recover, in virtue of a consideration passed by him to the party from whom he received it; and in such case, it is that consideration alone which gives him a right of action. And although the *law* supposes a consideration, and the plaintiff is under no necessity to prove one, yet if none did pass, it was a naked undertaking, of which the defendant may discharge himself at the trial, by showing a want of consideration, or that it was an illegal one; but the same principle does not apply to this, or any case of an endorsor, or intermediate endorsee, who under his liability on his endorsement has been obliged or pay or take up the bill. If it did, there never could be a recovery on a bill of exchange by an endorsor, or intermediate endorsee, against the drawer or immediate endorsor; for every endorsor, by his endorsement, discharges the preceding parties as to himself, and constitutes his endorsee the payee. No consideration, therefore, which he may have originally paid for the bill, can afford him a ground of action; for having parted with all his interest in it, he is presumed in law to have received a valuable consideration for it, and can have no right to the money a second time. He cannot then recover, in consideration of what he may have originally given for the bill; nor could he have an action on the bill, in consideration of payment by him in virtue of his endorsement, as such payment is not a consideration originally given for the bill, but must be subsequent, which is contrary to every day's experience; for no action is more common than that by an endorsor against a drawer, or an intermediate endorsee against his endorsor, in which the plaintiff can only recover, on proof of payment by him to the *bona fide* holder of the bill; which payment gives him a new title to receive the money from the antecedent party, and is the very foundation of the suit, and the consideration money between them, as immediate parties to the bill, is never made a subject of inquiry, and if proved, could not aid the plaintiff. How then can that be deemed necessary, to entitle a party to recover, which, if proved, can avail him nothing? And this shows that the principle, that as between the immediate parties to a bill of exchange the want of consideration is a sufficient defence, is only appli-

1810.

Wood
vs
Repold

cable where a payee or endorsee has never parted with the bill. In such case, if he has given nothing for it, he cannot be entitled to recover any thing upon it; and that it does not apply to any party to a bill, who, on its being protested, has been obliged to take it up; in which case it is not the consideration originally moving from him, which entitles him to recover, but it is the subsequent payment alone on which the law raises the promise, and gives him a new cause of action, and he sues in the capacity in which he paid the bill, and not that in which he received it. This application of the principle contended for, clears the case before us, I think, of all difficulty. The blank endorsement by *Wood* was an undertaking to pay the whole amount of the bill, if the acceptor or drawer should not, and it gave *Brown* authority to carry his credit into market, and to pledge it to all the world. On the faith of that pledge, *Repold* put his name on the bill, and thus incurred a liability, under which he has been obliged to pay one half of the amount of it to the Bank of *Baltimore*, where it was discounted; and it does not now lie in the mouth of *Wood* to say that he received nothing for it. *Wood*, by his endorsement, became liable for the whole amount of the bill, which liability was not in any manner lessened or impaired by *Repold's* endorsement, for the bank might have stricken out *Repold's* name, and recovered the amount from *Wood*. If then his liability was not extinguished by *Repold's* endorsement, what has since extinguished it? Surely not the payment by *Repold*, who certainly is entitled to indemnity from some of the antecedent parties. *Wood* was as a security, that if the acceptor or drawer should not pay the money, he would. They have both failed to pay it, and he, as their security, now stands responsible to *Repold* for so much as he has paid. But it is said, that as *Repold* was himself also a collateral security, the payment by him was only in discharge of his own pledge, and therefore gives him no cause of action against *Wood*; but that argument goes too far; for suppose *Wood* on his liability had paid the money to the bank, would it not equally have been in discharge of his pledge? And yet it will hardly be said, that he could not, in that case, have recovered in an action on the bill against *Brown*, (if he was solvent,)

1810.

Wood
vs
Repold

in consideration of such subsequent payment, though no money or other valuable consideration originally passed from him to *Brown*. And if *Wood*, on redeeming his pledge, could have sustained an action on the bill against *Brown*, on what principle is it, that *Repold*, having redeemed his, cannot sustain an action against *Wood*, who as to him, is the drawer of the bill, and to whom *Repold* stands in the same relation as he to *Brown?* And again, if a subsequent payment will give one immediate party a right of action on a bill of exchange against another, without any money consideration having originally passed between them, how can it be that the same principle does not extend to all? Nor is there any hardship in the case; *Wood* was bound for the whole of the money, and *Repold*, having paid a part of it, there is nothing unreasonable in his recovering it back again.

CHASE, Ch. J. As I do not concur in opinion with the court, respect and deference for their judgment, and what is due to myself, impel me to communicate the principles and reasons on which my dissent is grounded, and I have endeavoured to draw my opinion up in a plain and perspicuous manner, that my reasoning, and the principles and positions of mercantile law, on which it is founded, may be clearly discerned and understood.

A bill of exchange is assignable, and carries internal evidence of a consideration, in order to facilitate and strengthen that commercial intercourse which is carried on through its medium. The endorsement on a bill of exchange carries the same internal evidence of a consideration, and creates a liability or obligation to pay the money to the fair holder of it, who. after due diligence used, and the precautionary steps have been taken, can resort to the drawer or any of the endorsors, for payment of the money. All the endorsors are equally liable on their respective and several endorsements, and the holder can support an action against either, without regard to the order in which their names stand on the bill. Every endorsement is in the nature of a new bill. The consideration of a bill of exchange may be inquired into between the immediate parties to it, as between the drawer and payee. the drawer and acceptor, and the endorsee and his immediate endorsor.

As a bill of exchange, and the endorsement on it, carry with them internal or *prima facie* evidence of consideration, the *onus probandi* of the want of consideration is imposed on the defendant in both cases.

In this case it is admitted no consideration passed from *Repold* to *Wood*, as a motive or inducement for *Wood's* endorsement, except such as might arise in law from the previous endorsement of *Wood*. It is also stated, that *Wood* and *Repold* endorsed the said bill, at the request of *Aquila Brown*, to give credit to it, and to enable him to receive the money on it for his own use and benefit, and that at the time of said endorsement no communication had taken place between *Wood* and *Repold* respecting the said bill or endorsements, or respecting any endorsements to be made by them, or either of them.

This is a suit brought by the endorsee of a bill of exchange, against his immediate endorsor, to recover the money paid by him to the Bank of *Baltimore*, and which he was compellable to pay.

It cannot make any difference in this case, as to the question of consideration, whether the bill is considered as an accommodation bill, or as passing in the ordinary course of mercantile transactions; the essential properties and qualities appertaining to bills of exchange attach to each, and the usual forms and requisites must be complied with to establish a right of recovery against the drawer and endorsors.

Every endorsor of a bill of exchange becomes a collateral security, and by his endorsement engages to pay the money, if the drawer or acceptor does not.

The endorsement of a bill of exchange, *without* consideration, is a *nudum pactum*, as between the endorsor and his immediate endorsee, and no action can be supported on it by such endorsee.

The endorsement of a bill of exchange creates a liability in favour of every fair or *bona fide* holder of it, and such liability results, by operation of law, from the nature of a bill of exchange, and therefore an inquiry into the consideration in such case is precluded. The inquiry into the consideration of a bill of exchange, or the endorsement, being confined to the immediate parties to it, cannot restrict the negotiability of the bill, nor can any evils flow from it.

The payment of the money to the bank by *Repold*, was certainly not any consideration moving from *Repold* to *Wood;* nor could any liability from *Wood* to *Repold* be created by it. The consideration must exist at the time of the endorsement. The money was paid by *Repold* to the bank, in consequence of his own endorsement, and thereby he acquired a right of action or remedy against *Brown*, the drawer, but not against *Wood*, because *Wood* had received no consideration for his endorsement. *Wood's* name being on the bill, although it might be an inducement with *Repold* to become an endorsor, as the risk of his securityship might be diminished by it, was not, most assuredly, a request by *Wood* to *Repold* to become an endorsor, nor could it, in law, render him liable to *Repold*.

To give validity to an endorsement, and make it operate as a transfer to the endorsee from his immediate endorsor, there must be an existing consideration, at the time of the endorsement, of money, or something of the value of money, moving from the endorsee to the endorsor. The priority of the endorsement, independent or exclusive of any other circumstance, cannot create any liability. If the endorsement of itself created a consideration, it would be conclusive evidence in all cases, and the principle of law, which allows of an inquiry into the consideration between the immediate parties, would be infringed, and become a nullity.

It is stated in the case, that no consideration was received by *Wood* from *Repold*, except such as might arise by operation of law from the previous endorsement.

It has been contended by the counsel of the appellee, that as *Wood* endorsed the bill at the request of *Brown*, and delivered it to him for the purpose of enabling him to procure money on it, that *Brown*, by implication of law, became the agent of *Wood*, to use all necessary means to obtain the money, and that the request of *Brown* to *Repold* to endorse the bill, was the request of *Wood*, and that the subsequent payment of the money by *Repold* to the Bank of *Baltimore*, coupled with the request, created a good and valid consideration.

There can be no doubt but that, by these acts of endorsement and delivery, the credit of *Wood* was pledged to any person who would pay money on it, and that *Wood* would have become liable to such person; but surely they

could not constitute *Brown* the agent of *Wood*, or impart any authority to *Brown* to request *Repold*, or any other person, to endorse the bill. The full extent of *Wood's* engagement was to be responsible to any person who would advance the money on his credit. An agent cannot be made by operation of law; and more especially when he is to do an act, in that capacity, for his sole and exclusive benefit.

The case stated excludes all agency to make a request, because it states there was no consideration but what might arise by operation of law from the prior endorsement; and also states, that *Repold* endorsed the bill at the request of *Brown*, and does not state that it was done at the request of *Brown*, as the agent of *Wood*.

Both the endorsors' names were on the bill before the bill was negotiated, and the discount was obtained; and they both signed for the express purpose of giving credit to the bill, and enabling the drawer to get the money on it. No money passed from *Repold* to *Wood*, nor any other consideration; they were both collateral securities for the drawer, that the drawee should pay the bill; on the failure of the drawee to pay the bill, and on the holders complying with the usual requisites, they became liable on their respective endorsements to pay the money to him. On the admission that *Repold* paid the money to the bank, he could have resorted to the drawer, but *Wood*, his immediate endorsor, is not liable to pay the money to him, for want of consideration, and this on the supposition that it was a bill which had been transferred by *Wood* to *Repold* in the ordinary course of mercantile business, without consideration.

The payee of a bill of exchange cannot transfer it unless by a special endorsement, or an endorsement in blank, and delivery to the endorsee. In this case the endorsement by *Wood* was in blank, and the delivery was to *Brown*, and not to *Repold*; so that there was not any transfer from *Wood* to *Repold*. The bill came to the possession of *Repold* by delivery from *Brown*, not for the purpose of transferring it to him, but for the special purpose of his endorsing it to give it further or additional credit, and was, after endorsement by *Repold*, redelivered to *Brown*, for the sole purpose of enabling him to obtain money on it for his sole benefit. If a real bill, on what prin-

1810.

Wood
vs
Repold

ciple of law is it that the first endorsor is legally responsible to the second without any transfer or consideration?

Considering it as an accommodation bill, (of which there can be no doubt,) and that as such, it has all the qualities and properties incident to a bill of exchange negotiated in the accustomed mercantile manner, what is there in this case to prevent the want of consideration from being a bar to the recovery? I think there is not any thing in this case to distinguish it from the common action of an endorsee against his immediate endorsor, who endorsed without consideration.

As to the question of contribution on the ground of its being an accommodation bill: *Wood* and *Repold* are collateral securities; their names are on the same bill as endorsors, and they both signed prior to the obtaining the money by discount; they became securities for the drawer that the drawee would pay the money. It is not necessary that both securities should sign at the same time, one may sign one day, and the other on another day; nor is it necessary they should have a previous conference as to their intention of becoming securities, in order to render them liable to contribution. The liability to contribute results, as a consequence of law, from their having entered into the same engagement for the same person, and to do the same thing; the one having paid the whole money, it is on a principle of justice that the other is compellable to contribute his proportion. The action for contribution cannot be supported on the bill of exchange as such; but to entitle the party to a recovery it must specially set forth all the circumstances of the case as the ground of the action.

I can see nothing to distinguish this case from the common cases of securities on bonds and notes, the liability is similar, and the principle of justice is the same.

EARLE, J. The contending parties in this suit are the only endorsors of a bill of exchange, endorsed by each, at the request and for the accommodation of the drawer, to enable him to raise money for his own use and benefit; and the action is brought by the last against the first endorsor, on the ground of his having paid the bill to a fair holder. The principal questions arising out of the case are:

Whether there is a consideration between the parties sufficient to maintain the action? And

1810.

Wood
vs.
Repold

Whether a want of consideration is a defence that may be used against the present appellee?

As I agree with the chief judge on all the points he has touched in delivering his opinion, it seems unnecessary for me to give the result of my reflections upon any of them. I must, however, be allowed to make some short remarks on the two adjudged cases referred to in the argument, as decisive of the above questions.

The cases alluded to are those of *Seddons vs. Stratford*, and *Russell vs. Langstaffe*, neither of which, it appears to me, can be assimilated in circumstances or principles to the case before us.

The first is the case of an endorsor, who endorsed for accommodation, and having paid the note to a fair holder rested his claim upon his payment; but his suit was not against his immediate endorsor, nor did the defendant endorse solely to accommodate and raise money for another. The note was passed for premiums of insurance, and endorsed by *Stratford*, the payee, to *Clode*, who, as I understand the Reporter, endorsed to *Seddons*. The plaintiff and defendant being remote parties in the negotiation of the paper, between them the consideration could not be inquired into; and if they were immediate parties, the want of consideration was no defence for *Stratford*, because he had received value at the time of the endorsement—at all events he had not endorsed for accommodation. The situation of *Wood* in this transaction is far different. He endorsed immediately to *Repold*, and received value from no person; and it is therefore open to him to inquire into the subject of consideration, and show the total want of it.

*Russell vs. Langstaffe* resembles the case before us still less. The defendant had endorsed to raise money for another, and the plaintiff was his immediate endorsee, but *Russell* gave value for the note, and claiming merely as endorsee, founded his demand upon the money he had advanced to accommodate *Galley*. The money he advanced was the consideration he gave for the paper, and *Langstaffe* was not at liberty to defend on the ground that he had received no consideration when he endorsed, because he undertook to pay the note if *Galley* did not, to any person who would furnish the maker with the money. In no respect is the situation of *Repold* to be compared to that of *Russell*. He is endorsor as well as endorsee; and in his

action insists on an act done by him as endorsor. He did not give a consideration for the bill, but only paid to the person who did give a consideration for it; and instead of advancing to accommodate, he as a debtor, paid to fulfil his own engagement. His case is not within the contemplation of the understanding of *Wood* to pay to those who should advance for *Brown*, and it therefore seems to me, to be competent to *Wood* to show that there is no consideration between him and the appellee.

Not being able to discover how the payment of *Repold* can be viewed as a consideration, and it appearing to me that the want of consideration may be shown between the parties to this action, it is my opinion that the court below erred in refusing to give to the jury the directions prayed for. I am for reversing the judgment.

JUDGMENT AFFIRMED.