WILLIAM DRUHE, Appellant, *v.* FRANK M. CHRISTY, Respondent.

### July 5, 1881.

1. Successive accommodation indorsers of negotiable paper are not co-sureties, as between themselves, in the absence of an understanding between them to that effect before or at the time of the indorsements.

2. A subsequent understanding, in the absence of a new consideration, will not support an action for contribution by a prior against a subsequent indorser.

APPEAL from the St. Louis Circuit Court, LINDLEY, J.
*Affirmed.*

E. T. FARISH, for the appellant.

S. N. HOLLIDAY, for the respondent.

THOMPSON, J., delivered the opinion of the court.

The plaintiff has appealed from an order of the Circuit Court overruling his motion to set aside a non-suit and grant a new trial. The plaintiff and the defendant indorsed nine notes for the accommodation of H. W. Dionysius. The plaintiff was the first and the defendant the third indorser. The second indorser, Frederick Eickerman, has been discharged in bankruptcy. Judgments were obtained against the plaintiff and Eickerman and the defendant by the holder of the notes, and the plaintiff was compelled to pay the amount of them, amounting to some $15,000. Dionysius having died, the plaintiff became administrator of his estate, and has paid a dividend of twenty-two per cent upon his indebtedness, for which each of these notes has received its proportionate credit. He has brought this action against the defendant to recover one-half the amount which he has thus lost, upon the theory that he and the defendant occupy towards each other the relation of co-sureties on the notes.

The notes are negotiable. Each of them was made by Dionysius, payable to the order of the plaintiff, and each of them was indorsed by the plaintiff to Eickerman, by Eickerman to the defendant, and by the defendant to a person not before the court. There is no evidence of any agreement, understanding, or communication between the plaintiff and the defendant with respect to the nature of their liability as indorsers on the notes in question, at or prior to the time when they made the indorsement. The evidence

tends to show nothing more than that they indorsed merely for the accommodation of Dionysius; that they indorsed in the order named, as commercial paper is usually indorsed; and that they had no understanding with each other touching their liability as such indorsers. There is evidence, however, that, after the notes had fallen due and judgments had been recovered upon them against all three of the indorsers, and while the sheriff was pressing the defendant to pay, the defendant had conversations with the plaintiff, in which he admitted his liability to pay his portion of what was due on the notes. He wanted to know how much the assets of Dionysius would be short; how much he would have to pay; pleaded the want of money; and told the plaintiff that if the plaintiff would take up the first note, he (the defendant) would take up the second.

This case is governed by the decision of the Supreme Court in *McNeilly* v. *Patchin*, 23 Mo. 40, where it is held that successive accommodation indorsers upon a negotiable note are not co-sureties as between themselves, unless there is an understanding or agreement between them to that effect. In that case the court say — and it is upon this *dictum* that the plaintiff relies: "We have no doubt that any understanding between persons that they are to be considered joint indorsers or sureties, or any conversation between them authorizing the belief that such is their liability, as respects themselves, would be sufficient to let the case go to the jury for their decision on the fact." This obviously refers to an understanding had before, or at the time of the making of the indorsements. If there was no such understanding at that time, a subsequent understanding, especially after the liability of the indorsers had become fixed by a judgment, would be in the nature of a contract without a consideration, and would not entitle the prior indorser to maintain an action for a contribution against the subsequent indorser. It is not unlikely that, if the evidence left it doubtful whether or not there was such an agreement

or understanding between the indorsers, at or prior to the time of the making of the indorsements, their subsequent conversations between each other would be admissible as evidence of what their prior agreement or understanding really was. But here it is not pretended, nor is there any testimony tending to show, that there was such a prior understanding or agreement. If, then, the defendant, in conversations had with the plaintiff, after judgment had been rendered against them as indorsers, admitted his liability to contribute to the plaintiff his share of what the estate of Dionysius would not be able to pay, such admissions would not be binding upon him, unless supported by a new consideration; and there is no evidence tending to show that there was any new consideration. For aught that appears he may have made these admissions through ignorance of what his legal liability in the premises really was; or he may have made them out of a fear that the plaintiff would not, or could not, pay the balance of the judgment; or he may have made them out of a feeling that he and the plaintiff, having indorsed the notes of Dionysius equally without consideration and equally and merely for the accommodation of Dionysius, it would be equitable in him, after the bankruptcy of the other indorser, to sustain, with the plaintiff, an equal share of the loss. But whatever his motives may have been, they left his legal liability unchanged.

There are, no doubt, circumstances under which it would be highly equitable that one who has indorsed a note for the accommodation of the maker should stand as co-surety with a prior indorser; and there are circumstances where it would be highly inequitable to compel the subsequent indorser thus to contribute. If A. were to bring his negotiable note to me, indorsed by B. and C. for his accommodation, and request me to indorse it also for his accommodation, I might be very willing to do it, trusting, not to the solvency of the maker, but to the solvency of the prior indorsers, and knowing that, under the existing law, they would be

compelled to answer for the payment of the note to me. If, in such a case, B. were compelled by process of law to pay the note, it would be highly inequitable to allow him to enforce contribution of me.

But we need not speculate upon these questions. We have to enforce a settled rule of law. *McCune v. Belt*, 45 Mo. 174. Under this rule the evidence of the plaintiff showed no agreement or understanding which entitled him to contribution of the defendant, and the learned judge did right in instructing the jury that the plaintiff could not recover. The judgment is therefore affirmed. All the judges concur.