GILLESPIE *et al.* *v.* CAMPBELL.

(*Circuit Court, N. D. Illinois.* September 9, 1889.)

1. NEGOTIABLE PAPER—LIABILITY BETWEEN ACCOMMODATION PARTIES.
    An accommodation indorser of a bill of exchange, meeting the debt when legally charged with its payment, becomes a holder for value of the bill, and may recover thereon against an accommodation acceptor the full amount paid, notwithstanding he knew at the time of indorsement that the acceptance was for accommodation.

2. CONTRIBUTION—BETWEEN ACCOMMODATION PARTIES.
    An accommodation acceptor of a bill of exchange has no claim for contri-bution against subsequent accommodation indorsers, though the indorsers knew the acceptance to be without consideration.

3. NEGOTIABLE PAPER—ACTIONS—DEFENSES.
    In an action by two accommodation indorsers of a bill of exchange against a prior accommodation acceptor, it is no defense to the claim of plaintiffs for payment of the bill that the proceeds of the bill when discounted were applied by the drawer to the payment of paper on which one of the plaintiffs was an indorser.

At Law.    On motion for new trial.

*J. A. Sleeper*, for plaintiffs.

*A. & C. B. McCoy*, for defendant.

JENKINS, J.    The defendant moves to set aside the verdict for the plain-tiffs, and for a new trial, mainly upon the ground that upon the proofs disclosed a recovery is not sanctioned by the law. The action is by the plaintiffs as indorsers against the defendant as acceptor of a certain inland bill of exchange, dated April 1, 1886, for $3,000, at 90 days, drawn by

one R. G. Buchanan, of Franklin, Tenn. The bill was to the order of the plaintiff Gillespie, was indorsed by him and the plaintiff Winsted, and at its maturity was held by the National Bank of Franklin. This bill was in renewal of one for a like amount dated December 31, 1885, at 90 days, drawn, accepted, and indorsed by the same parties. On the 26th of December, 1885, Buchanan forwarded the original bill by mail to the defendant at Chicago, requesting its acceptance for the personal accommodation of the drawer. It was not at that time indorsed by either of the plaintiffs. The bill was thus accepted by the defendant, and returned to the drawer, who procured the plaintiffs severally to indorse it for his accommodation, that he might procure discount thereof at the bank at Franklin. He states that he notified the plaintiffs at the time that the acceptance by the defendant was purely an accommodation acceptance. This assertion is disputed by the plaintiffs, but the fact is assumed to be as stated by Buchanan. The plaintiffs thereupon severally indorsed the bill without consideration, and returned it to Buchanan, who procured it to be discounted at the National Bank of Franklin, the proceeds being passed to his credit in account, and subsequently drawn out upon his checks. There was no communication between the accommodation parties to the bill respecting the liability *inter se* to be assumed by either, nor any agreement in regard thereto other than that implied by the law, nor did the acceptor know that there was to be any accommodation indorsement of the bill. The renewal bill was protested at maturity, and the indorsers charged with its payment. The plaintiffs thereafter, on July 19, 1886, paid to the bank the amount, in equal portions. The bill was thereupon surrendered by the bank, and the plaintiffs seek to recover thereon against the acceptor of the bill.

It is urged for the defendant that the parties litigant, being all accommodation parties to the bill, were co-sureties for the drawer; that therefore the plaintiffs can maintain no action on the bill as such, and may only recover in separate actions, and upon the equitable principle of contribution, such an amount as each has paid in excess of the one-third part of the bill.

With respect to business paper, the parties thereto are liable to each other in succession, as their names appear. The acceptor of a bill is the principal debtor. As between successive indorsers, the writing imports a several and successive, not a joint, obligation. In this respect there is no distinction between accommodation and other paper. They are both governed by the same rules. 3 Kent, Comm. *86. It is competent for the accommodation parties to a bill, as between themselves, to contract for a liability different from that evidenced by the paper itself, and parol evidence thereof is receivable. *Phillips* v. *Preston*, 5 How. 278. But, wanting such independent agreement, the several successive parties to accommodation paper are bound to those succeeding them, who have been compelled to meet the obligation. In such case parties are not bound to contribution. The principle upon which the rule is founded, is this: The indorser has incurred a contingent liability upon the faith of the antecedent names to the paper, and by payment becomes

entitled to all the rights of an indorser for value, with remedy over for the whole amount paid against the prior parties. The obligation of the one is primary; of the other, secondary. It is of no moment that the accommodation indorser knew that the acceptance was without consideration. He has incurred and met his obligation upon the faith of the acceptance, and stands in the light of a holder for value. The principle was established by the supreme court in 1830, in the case of *McDonald* v. *Magruder*, 3 Pet. 470, the opinion of the court being delivered by Chief Justice MARSHALL. There the first accommodation indorser sought to recover contribution of a second accommodation indorser of a note. The court held that, to authorize contribution, the undertaking must be joint, not separate and successive; that the second indorser, incurring liability upon the faith of the first indorser, as well as of the maker, and meeting that liability, stands as a holder for value, and the contract as between him and his immediate indorser cannot be said to be without consideration. This ruling was followed and approved in *Phillips* v. *Preston*, 5 How. 278, and in *McCarty* v. *Roots*, 21 How. 437, 441. The principle established has never since been questioned in the federal courts. If these cases stood alone, and in antagonism to the general current of authority, they would of course be binding upon this court. The doctrine of these decisions has, however, been sustained in most courts of the states of the Union speaking to the question. *Smith* v. *Morrill*, 54 Me. 48; *Coolidge* v. *Wiggin*, 62 Me. 568; *Johnson* v. *Crane*, 16 N. H. 68; *Church* v. *Barlow*, 9 Pick. 547; *Clapp* v. *Rice*, 13 Gray, 403; *Woodward* v. *Severance*, 7 Allen, 340; *Shaw* v. *Knox*, 98 Mass. 214; *Kirschner* v. *Conklin*, 40 Conn. 77; *Brown* v. *Mott*, 7 Johns. 361; *Suydam* v. *Westfall*, 2 Denio, 205; *Kelly* v. *Burroughs*, 102 N. Y. 93, 6 N. E. Rep. 109; *Youngs* v. *Ball*, 9 Watts, 141; *Ross* v. *Espy*, 66 Pa. St. 481; *Wood* v. *Repold*, 3 Har. & J. 125; *Pomeroy* v. *Clark*, 1 MacArthur, 606; *Bank* v. *Beirne*, 1 Grat. 234, 265; *Hogue* v. *Davis*, 8 Grat. 4; *Bank* v. *Vanmeter*, 4 Rand. (Va.) 553; *Marr* v. *Johnson*, 9 Yerg. 1; *Brahan* v. *Ragland*, 3 Stew. (Ala.) 247; *Spence* v. *Barclay*, 8 Ala. 581; *Moody* v. *Findley*, 43 Ala. 167; *Cathcart* v. *Gibson*, 1 Rich. Law, 10; *Aiken* v. *Barkley*, 2 Spear, 747; *Weir* v. *Cox*, 9 Mart. (La.) 573; *Connely* v. *Bourg*, 16 La. Ann. 108; *Stiles* v. *Eastman*, 1 Ga. 205; *Hixon* v. *Reed*, 2 Litt. (Ky.) 176; *McNeilly* v. *Patchin*, 23 Mo. 40; *McCune* v. *Belt*, 45 Mo. 174; *Stillwell* v. *How*, 46 Mo. 589; *Druhe* v. *Christy*, 10 Mo. App. 566; *Wilson* v. *Stanton*, 6 Blackf. 507; *Woodworth* v. *Bowes*, 5 Ind. 277; *Core* v. *Wilson*, 40 Ind. 204; *McGurk* v. *Huggett*, 56 Mich. 187, 22 N. W. Rep. 308. But two American cases were cited to the contrary, and these may be readily disposed of. The case of *Douglas* v. *Waddle*, 1 Ohio, 413, arose upon a note; and, if there be no distinction in this respect between a note and a bill, (and I can conceive of none,) sustains the defendant's position. The authority of this case is denied in *McDonald* v. *Magruder*, supra. In *Williams* v. *Bosson*, 11 Ohio, 62, the case of *Douglas* v. *Waddle* is said to have been founded upon and to recognize and establish as law a local usage or understanding that accommodation indorsers of notes were joint sureties, and not liable to each other in the order of their coming on the note. Without directly over-

ruling the case, the court refused to extend the rule to bills of exchange, and held that accommodation indorsers of such paper are not joint sureties, but are separately liable to each other in their order. This decision is approved in *Kelley* v. *Few*, 18 Ohio, 441. The case relied upon is consequently without weight. The case of *Paulin* v. *Kaighn*, 27 N. J. Law, 503, was one for contribution between two co-obligors on a joint bond. The right of contribution in such case is not doubted. Nor is it disputed that the obligation to contribute arises, not from mutual engagement, but from principles of equity and morality.

In addition to the foregoing, I have fallen upon decisions in two other states sustaining the contention of the defendant, which it may be well to notice. *Flint* v. *Day*, 9 Vt. 345, and *Pitkin* v. *Flanagan*, 23 Vt. 160, 166, both sustain the theory of the defense, but they are doubted in *Keith* v. *Goodwin*, 31 Vt. 268, 276, and would seem to be of no present, or at least of doubtful, authority in that state. In *Daniel* v. *McRae*, 2 Hawks, 590, by a divided court, accommodation parties to commercial paper are held to be co-sureties in whatever order or character they are placed upon the paper. The doctrine declared came for review before the supreme court of North Carolina in *Richards* v. *Simms*, 1 Dev. & B. 43, 51. The court states that the rule in that state had been so generally acquiesced in that, upon the principle of *stare decisis*, it felt bound to follow it as established law; but the judges unanimously declared that, were the question *res integra*, the principle could not be sanctioned; and they "should say, as has been said by the rest of the mercantile world, that the parties to accommodation paper were to be governed by the same rules as parties are governed whose names are on other or business paper." It may therefore fairly be said that the few decisions in this country upholding the contention of the defendant have been repudiated and shorn of their authority within their respective jurisdictions, and that the courts of the states, so far as they have spoken, approve and follow the decisions of the supreme federal tribunal.

The case of *Reynolds* v. *Wheeler*, 10 C. B. (N. S.) 561, undoubtedly sustains the defense here. It sanctions the right of an accommodation acceptor to contribution from an accommodation indorser. The decision is based upon general principles of suretyship, overlooking the presumption of the mercantile law that subsequent accommodation parties signed in reliance upon the responsibility of the prior accommodation parties. The case was decided in 1861, and appears not to have been reviewed in any court. It would seem to be opposed to the principle upon which *Fentum* v. *Pocock*, 5 Taunt. 192, was decided, wherein Lord Chief Justice MANS-FIELD remarked: "And I never before knew that there was any difference between an acceptance given for accommodation, and an acceptance for value." I am referred to and can find no other case in England directly to the question. The absence of other authority in that country is somewhat remarkable. The case stands alone; citing no authority to sustain, in opposition to the general current of authority, and in antagonism to the ruling in *McDonald* v. *Magruder*, which may not be disregarded in this court.

In *Dering* v. *Earl of Winchelsea*, 1 Cox, Ch. 318, 2 Bos. & P. 270, 1 White & T. Lead. Cas. Eq. *60, contribution was enforced between sureties on different bonds for the same debt. But in *Coope* v. *Twynam*, 1 Turn. & R. 426, the lord chancellor stated that that decision had been doubted at Westminster Hall, and that contribution was dependent upon whether the transaction was separate and distinct, or the same transaction split into different parts. The case, however, received the approval of the supreme court in *McDonald* v. *Magruder, supra*, and was distinguished for the reason that in the one case the parties stood in the same relation to the obligee of the bond and to each other; while in the other the relation of the parties is dissimilar, the indorser giving his name on the faith of the precedent parties to the bill. In Mr. Hare's notes to this case (1 Lead. Cas. Eq. 3d Amer. from 2 London Ed. 157) he asserts that "where successive indorsers all indorse for accommodation of the maker, though at different times, and without communication or mutual understanding, they are in equity co-sureties, subject to common contribution; and evidence is admissible to show that successive indorsers sign for accommodation, and thus to render them subject to contribution." The author cites to sustain the statement *Daniel* v. *McRae*, 2 Hawks, 590, which, as shown *supra*, has been repudiated as authority by the court in which it was decided. The statement by the author is contrary to established law.

It may not be denied that there is an engaging, persuasive equity in the principle that all sureties should share equally the burden assumed; and that in general is the law. "Equality is equity." But in the case of commercial paper a superior equity intervenes, in that liability has been assumed upon the faith of prior engagement, and that without respect to knowledge of the accommodation character of precedent stipulation. And, after all, the distinction between the two classes of authorities is more apparent than real; or is perhaps one resting in the burden of proof. The one assumes the contract to be as appears upon the face of the paper, construed by the mercantile law, permitting and enforcing all agreements for a different liability *inter se*. The other declines to assume that the one party has become bound upon faith of the other's precedent engagement, and treats all accommodation parties, however they may appear upon the paper, as co-sureties and equally bound for the debt, and so liable to contribute; but likewise recognizing and enforcing any different engagement between the parties. Whichever rule may seem the more equitable and to be preferred, the former is too firmly established to be disturbed. Individual notion of right must now yield to the wiser judgment of the law.

It is also insisted for the defendant that the court erred in failing to submit to the consideration of the jury the question whether the proceeds of the original draft were applied by Buchanan in whole or in part towards the payment of other paper upon which the plaintiffs or one of them were indorsers. On January 1, 1886, the bank held four pieces of Buchanan's paper, severally indorsed for accommodation by one or the other of the plaintiffs, but no one piece indorsed by both. Three-

of such notes were renewed at maturity, and, if ever paid, were not paid by the proceeds of the Campbell acceptance. The only one to which the objection can apply is the note for $5,000, indorsed by Winsted, one of the plaintiffs, maturing January 12–15, 1886. That note was paid prior to April 3, 1886, but when prior does not appear. The Campbell acceptance of $3,000 was discounted by the bank, January 5, 1886, and the proceeds passed to the credit of Buchanan on account. The cashier of the bank asserts that the amount was disbursed by sundry checks of Buchanan's on the bank. His account with the bank is not produced. Whether in point of fact the proceeds of the Campbell acceptance were applied towards the payment of the $5,000 note, maturing some 10 days after the discount of that acceptance, is therefore left in doubt. The production of the bank account would have relieved the doubt, and established the truth. Neither Buchanan nor the cashier could from recollection and without reference to the bank account testify to the fact. In the absence of testimony of other transactions with the bank, the jury might fairly infer that the proceeds of the acceptance went towards the payment of the note. If, therefore, the fact is material, the question should have been submitted.

Buchanan requested the acceptance of Campbell to enable him to raise money "to run his business." The defendant accepted the bill, and returned it to the drawer, with a view to its use for that general purpose. There was no restriction upon its use for the needs of the drawer in his business. If the proceeds were applied by Buchanan towards the discharge of his debt, that was one of the uses contemplated. That was no fraud upon the defendant. If with the proceeds Buchanan discharged in part a debt for which Winsted, one of the plaintiffs, was holden as an accommodation indorser, that is not an availing defense. It was none the less the debt of Buchanan, which he was obliged to discharge, and could rightfully discharge with the proceeds of the Campbell acceptance. It is of the first importance in any business that one should pay maturing obligations, and that object must be deemed to have been within the contemplation of the defendant in accepting this bill. It was a legitimate use of the credit loaned by him. But, if otherwise, it was the act of Buchanan, and not of the plaintiff Winsted. He is not shown to have had any connection with or knowledge of the transaction. If known to him, it is not perceived that the fact would avail to discharge the liability of the defendant upon his acceptance. It is true that thereby Winsted was relieved of his contingent liability upon that note, or, rather, that his contingent liability for that debt was transferred to the bill in suit. The debt, however, was the debt of Buchanan, which he was primarily obligated to discharge. The defendant's credit was loaned that means might be obtained by Buchanan to meet his obligations. It was wholly immaterial in this connection whether the proceeds of the credit loaned were used for future speculation, or to enable Buchanan to meet past obligations, and to continue his business. And, again, the plaintiffs sue as joint owners of the bill. The defense asserted, if otherwise availing, cannot advantage the defendant here. It could only be well pleaded

against the plaintiff Winsted alone. It could not affect the plaintiff Gillespie, who was neither a party to the note paid nor to the payment of it. The plaintiffs stand in the shoes of the bank, as *bona fide* holders for value, and as joint owners of the bill. Any defense, to avail, must affect both, and not one only, of the joint owners of the bill. The motion for a new trial will be overruled, and judgment ordered upon the verdict.