No. 28.—WILLIAM H. STILES *vs.* MOSES EASTMAN, SHELDON C. DUNNING, and HENRY D. WEED.

Several judgments are rendered against the endorsers of the same note; the two last, by agreement with the plaintiffs, take an assignment of the judgment against the first, and as a consideration therefor, they pay the plaintiffs the amount due upon the judgments against themselves, which are entered satisfied. Held, that the judgment so assigned is not extinguished by the satisfaction of the judgments against the two last endorsers, and that they may under such assignment proceed with the *fi. fa.* against the first endorser, and by levy and sale reimburse and remunerate themselves the amount paid out by them; it appearing that they were not interested in the consideration of the contract on which the endorsed note was given.

The control of an execution against the maker and prior endorsers, as provided for by the act of 1839, should be obtained under an order of the court from whence the execution issued, upon the showing required by that act, in which it is not necessary to show that the payment by the subsequent endorser was forced by levy; it may be voluntary, and yet, in the eye of the law, it is a payment under the compulsion of legal process.

Accommodation endorsers are not liable to contribution as securities, either by the common law or under the provisions of the act of 1826.

This was a bill in equity, tried before Judge Fleming, in the Superior Court of the county of Chatham, May Term, 1846.

The facts of the case, and the errors assigned in the court below, being fully set forth in the opinion of the Supreme Court, are omitted here.

L. S. D'LYON, for plaintiff in error.

Maintained that under the statutes of Georgia endorsers are securities, and equally liable for contribution when the principal fails or is insolvent.

By the act of 1826[a] (*Prin. Dig.* 462) the endorser of a promissory note is held, taken and considered as a security to the same, and in all respects bound as a security. This statute, therefore, changes the common law in reference to endorsers, and does away with the necessity of demand and notice, so as to bind the endorser, considering him as a security.

The act of 1840,[a] (*Pamphlet Laws*, 172, 173,) entitled "An Act for the relief of Securities," makes them liable for a proportionable part of the debt and no more. In its proviso, it declares that all shall be equally liable. This statute seems to contemplate an equitable liability.

If, then, endorsers in Georgia are regarded as securities, where they are not interested in the consideration of the note, then Mr. Stiles could be only liable for one-third of the debt, being the part or portion equitably due by him.—*Bayley on Bills*, 150, *note.*

But if the counsel for the plaintiff in error shall be mistaken in this view of the liability of accommodation endorsers in Georgia, then he maintains : *Secondly*— That the payment and satisfaction of the judgments against two of the endorsers of the note, viz : Eastman and Dunning, was an extinguishment of the judgment against Stiles, which would only render him liable to contribute equally with the other endorsers, without regard to his ultimate liability to them.--1 *Bailey Rep.* 140.

The subsequent assignment of the judgment against Stiles would not restore its validity, there being satisfaction entered for the same demand.—1 *Bailey Rep.* 427, *and case there cited.*

Upon the payment by Dunning and Eastman of the judgments against them on the same note, the Savannah Insurance and Trust Company was satisfied their debt, and had nothing to assign. They could assign no more than they had ; they

---

(a) "An Act to define the liability of endorsers of promissory notes, and other instruments, and to place them upon the same footing with securities."—*Approved Dec.* 26, 1826.

"*Sec.* 1. From and after the passage of this act, that the practice heretofore required, of making a demand of the makers of promissory notes and other instruments, for the payment and performance of the same, and their giving notice of such demand, within a reasonable time, to the endorser of said promissory notes and other instruments, shall cease and become entirely unnecessary to bind said endorsers ; and where any person whatever endorses a promissory note or other instrument, he shall be held, taken, and considered as security to the same, and be in all respects bound as security, until said promissory note or other instrument is paid off and discharged, and shall be liable to be sued in the same manner and in the same action with the principal or maker of said promissory notes or other instruments ; any law, practice, or usage to the contrary notwithstanding : Provided, always, that nothing herein contained, shall extend to any promissory note which shall be given for the purpose of negotiation, or intended to be negotiated at any chartered bank, or which may be deposited in any chartered bank for collection ; and provided, also, that nothing contained in this act shall be so construed as to prevent the endorser from defining his liability in the endorsement."—*Dawson's Compilation*, 76.

(b) "An Act for the relief of securities."—*Approved Dec.* 22, 1840.—(*Pam. Laws*, 172, 173.)

"Whereas, great inconvenience arises, and often great injustice done to individuals being parties in execution, under the existing law as co-securities—for the fact, that whereas one security (as the case may be,) having been compelled under execution, to pay the debt or obligation of his principal, is not allowed to control or collect by said execution, each security's proportionable part of said execution so paid, but must proceed by an action at law :

"*Sec.* 1. For remedy whereof, be it enacted, &c., That from and immediately after the passage of this act, any security (who may be sued together with other securities)

have placed the assignees in their stead in regard to Mr. Stiles, and they have assigned to them an extinguished and satisfied judgment.

But Mr. Stiles has paid up one-third of the judgment, and the cost in the three cases, and the assignees can have no remedy against him, even by action of assumpsit, for money paid, laid out and expended.

This would have been their only remedy, if Stiles had contributed nothing towards the payment of the judgment, the execution was satisfied, and the assignment could not give it vitality.

Upon the payment by the assignees of the entire judgment, they could only have become simple contract creditors of their co-endorser.

3d. The counsel for the plaintiff in error further maintained, that the court below erred in charging the jury that the act of 1839(c) embraced this case, and the assignment rendered the execution good and valid against the said William H. Stiles

The statute does not apply :

1st. Because the evidence does not prove that Eastman and Dunning were compelled to pay the said judgment, but the payment was voluntary.

2d. Because the defendants in error only paid off a part of the judgment, and never paid any part of the costs.

3d. Because the act contemplates a payment to the sheriff, where no assignment is necessary.

4th. Because the defendants in error, claim to control the said assignment, by act of the plaintiff in execution, and not under the provisions of said act.

Wm. Law, for the defendants in error.

The principal question argued in this case was, whether an accommodation endorser was liable to contribution as a co-surety.

---

shall pay or discharge any execution or executions, issued against principal or co-securities, shall, after an entry is made on the said executions by the collecting officer, that the same has been well and truly paid by said security, then and in such cases, the said security so paying or discharging said execution against each co-security who may have been made a party to said suit, for the proportionable part equitably due by each, and no more. Provided, nevertheless, that all should be equally responsible ; if not, then to be equally divided or paid by those who are.

" *Sec.* 2. That any execution so paid or satisfied by two or more securities, shall be held as the joint property of said securities against all the parties equally concerned, for their proportionable part.

" *Sec.* 3. That after payment and entry made, as herein prescribed, it shall be the duty of the officer making the entry, to deliver the said execution to the security who shall have made the payment, to be used and controlled as herein mentioned."

(c) " An Act to provide a remedy for endorsers against all prior endorsers, and the makers of promissory notes and other contracts, in certain cases therein mentioned."—*Approved Dec.* 21, 1839.—*See Pamphlet of Acts,* 58.

" *Sec.* 1. That from and immediately after the passage of this act, it shall and may be lawful for all persons who shall hereafter become endorsers on any promissory note, bond, or other contract, made on the face thereof payable at any chartered bank, or which shall be negotiated at any chartered bank, or deposited there for collection, and where said endorsers are not interested in the consideration thereof, and judgment has been rendered against them, and execution has been issued thereon accordingly, and where such endorser or endorsers shall hereafter be compelled to pay off such judgments or executions, he, she, or they shall be entitled to the full control of each and every judgment or execution that shall or may be founded upon the same instrument as against the makers thereof, and all prior endorsers thereon, for the purpose of reimbursing and remunerating him, her, or themselves, out of the property of said maker and endorsers : Provided, the person applying for such control shall make it appear to the court from which the execution issued, that he was only endorser thereon, and not interested in the consideration of said contract, and that he has *bona fide* paid off and discharged the judgment or execution that has been rendered or issued against him, and all costs on the other judgments."

The following decisions, it would seem, ought to settle this point.—*Bayley on Bills*, 151; 9 *Pick.* 8, 547; 3 *Peters,* 470; 4 *Rand.* 553; 7 *Johns. Rep.* 361.

2d. If the general principle be so, still it is contended, that the law of Georgia of 1826, makes all endorsers securities, and, therefore, that they are liable to contribution.

Our first reply is, that they are only to be taken, held, and considered as securities, so far as to dispense with demand and notice. The object of the act was to increase, and render more certain and easy their liability, and not to mitigate it.

But the decisive answer is, that this case is within the proviso of the act; it was a bank note.—*See Prince*, 462.

The act of 1840, as to co-sureties, is relied on; but that act applies only to those who are *equally liable.*

It is very clear that the act of 1826 did not make endorsers securities, as to their liability, because, in 1839 the legislature passed an act, providing a remedy for endorsers, against all prior endorsers, &c.

This brings us to the consideration of the last points in this case, viz: that the satisfaction of the execution against Eastman and Dunning, was a satisfaction of the judgment against Stiles.

I might content myself by saying, that the act of 1839 furnishes a decisive answer to this objection.

That act expressly provides, that when a note is payable on its face at bank, or was intended to be discounted at a bank, or lodged there for collection, an endorser, paying it, might use the judgment to make the money out of any prior party.

But let us examine the cases referred to.

1 *Bail.* 140. The principle affirmed in this case is, that a levy is satisfaction, unless shown to be unproductive. A. having two distinct judgments against two for the same debt, levies and applies the money raised to a junior judgment; he afterwards levied on the other defendants. Ruled, that the first levy satisfied the debt, as he could have payment but once for the same debt, the other judgment was extinguished.

With this case I do not quarrel.

1 *Bail.* 437. *Judgment* vs. *maker and endorser.* Endorser pays; *subsequently* he procures an assignment of the *judgment* vs. *maker.* Ruled, that the judgment having been extinguished by the previous payment, there was nothing to assign. But suppose the assignment had been made at the time of payment, and in consideration of it? It would have been a purchase of it by the endorser. The judgment against him would have been extinguished; but surely not that against maker.

I have three answers to give to these cases.

1st. It was the agreement at the time that the assignment should be made; and it was made. It was not designed that the judgments should be satisfied. 3 *McCord, 2. Bail.* 15.

2d. No satisfaction entered by the Trust Company could affect the assignee after the assignment.

3d. The statute of 1839.

*By the Court*—NISBET, Judge.

The facts in this case are as follows: William A. Howard, having occasion to raise money, made his promissory note, payable at any chartered bank in the city of Savannah, and procured the endorsement thereon of the plaintiff in error Wm. H. Stiles. The banks, declining to discount the note without other endorsers, the endorsement of Moses Eastman and S. C. Dunning was procured. With these endorsers, it was discounted, and at maturity protested. The owners of the note, the

Savannah Insurance and Trust Company, instituted suits severally against the endorsers, the maker being insolvent, and obtained a judgment against each of them. Stiles paid a part of the debt. Eastman and Dunning, by Mr. H. D. Weed, who advanced the money, paid the whole of the debt remaining due, under an agreement that the plaintiffs, to wit: the Savannah Insurance and Trust Company, would assign to them the judgment against Stiles. It was assigned to Mr. Weed by the Savannah Insurance and Trust Co., for the use of Messrs. Eastman and Dunning; and on the same day satisfaction was entered on the judgments against them, by the plaintiffs' attorney, in the office of the Clerk of the Inferior Court. The assignees of the judgment against Stiles, threatening to levy upon his property, he filed a bill enjoining it, and calling upon them to account, as securities liable to contribute; alleging the facts herein stated; also, that he, Stiles, had paid his proportion of the debt, and that there was an agreement between the endorsers that they should equally share the loss, if compelled to pay the note. This last allegation was not proven on trial.

Upon the trial, the court was asked to charge the jury, by plaintiffs' counsel:

1st. That endorsers, under the statutes of Georgia, upon promissory notes, endorsing for accomodation only, are mere securities, and equally liable to contribution.

2d. That the payment and satisfaction of the judgments against Eastman and Dunning, as endorsers on the note, was an extinguishment of the judgment against the first endorser, Stiles, which would only make him liable to contribution; and having paid his part, the whole debt was satisfied as to him.

Which charges the court below declined to give; but, on the contrary, did charge the jury, that under the act of 1839, Eastman and Dunning, subsequent endorsers, having paid the judgment against themselves, and taken an assignment of the judgment against Stiles, the first endorser, and having shown to the court that they were not interested in the consideration of the debt, that judgment was valid, and they had the right to use and enforce the same to reimburse themselves.

Upon the two points upon which the court declined to charge, and upon the charge which the court did give, the errors in this cause are assigned.

The first point for our consideration is, whether, according to the facts in this case, the endorsers, under the act of 1826, occupy the position of securities, and are liable to contribution? The act of 1826, (*Prin. Dig.* 426) by its terms, does not extend to " promissory notes which shall be given for the purpose of negotiation, or intended to be negotiated at any chartered bank, or which may be deposited in any chartered bank for collection;" all *such* promissory notes are expressly exempted from the operation of the act in the proviso.

Now, as the note upon which these judgments are founded, is upon its face made payable at " any of the incorporated banks of the city of Savannah," and was in fact deposited in a bank for collection, we believe that the act of 1826 has no application whatever to it. It is one of that class of notes excepted from the operation of the act by the terms of the proviso. If it was not, we do not believe that the act of 1826 repeals

the common law, as to the liability of endorsers. That act, in our opinion, does not make endorsers liable to contribution as securities, but leaves their liability as it found it at common law. They are still liable, as endorsers, and the effect of the act of 1826, in its application only to notes not given "for the purpose of negotiation, or intended to be negotiated at any chartered bank, or which may be deposited in any chartered bank for collection," is, to relieve the holders of such notes from the necessity of demand and notice, in order to charge the endorsers, and to make them liable to be sued, "in the same manner and in the same action with the principal or maker." It is, therefore, the judgment of this court, that the court below did not err in declining to charge upon this point, according to the request of the counsel for the plaintiffs.

Had the satisfaction of the judgments against Eastman and Dunning been entered before the assignment to them of the judgment against Stiles, *bona fide,* the judgment against Stiles would have been extinguished, and the assignment could not have revived it. In that event, there would have been nothing to assign; both the debt, and the process for collecting it, would have been extinguished. It is true, as argued by the learned counsel for the plaintiffs, that a plaintiff having judgment against several for the same debt, can have but one satisfaction. Payment to him of one, discharges all, except as to the costs. And in the case before us, the plaintiff in these judgments, the Insurance and Trust Company of Savannah, being paid, *as to them,* the judgments are all satisfied; they can never have another satisfaction. But how stand the facts of this case? Eastman and Dunning, being subsequent endorsers, purchase of the plaintiffs their judgment against Stiles, the first endorser, and take an assignment of it to Mr. Weed, for their use. This a stranger could do. Why not they? A part of the agreement of purchase is, that the judgments against themselves shall be entered satisfied, and accordingly, in pursuance of the understanding, they are so entered, and this is done, not before the assignment, but the same day, and must therefore be considered contemporary with it. Without any agreement that satisfaction should be entered upon them, they would have been satisfied by the fact of payment. Such an understanding was unnecessary. The result is, that as purchasers, they are entitled to control the judgments against Stiles; and that, although extinguished, so far as the plaintiffs are concerned, it is yet vital, so far as their assignees are concerned.

To the mind of this court, this case is within the provisions of the act of December, 1839, (*Hotchkiss,* 546.) That act provides that endorsers upon "any promissory note, bond, or other contract, made on the face thereof payable at any chartered bank, or which shall be negotiated at any chartered bank, or deposited there for collection, and where said endorsers are not interested in the consideration thereof, a judgment has been rendered against them, and execution has been issued thereon accordingly; and when such endorser or endorsers shall hereafter be compelled to pay off such judgments or executions, he, she, or they shall be entitled to the full control of each and every judgment and execution, that shall or may be founded upon the same instrument, as against the makers thereof, and all prior endorsers thereon, for the purpose of reimbursing and remunerating him, her, or themselves, out of said maker and endorsers. *Provided,* the person applying for such control shall make it appear to

the court from whence the execution issued, that he was only endorser thereon, and not interested in the consideration of said contract, and that he has *bona fide* paid off and discharged the judgment or execution that has been rendered or issued against him, and all costs on the other judgments."

Now, the record shows that these judgments are founded upon a *promissory note*; that the note, on the face thereof, was made *payable at a chartered bank*—was *negotiated at a bank*; that Eastman and Dunning were endorsers upon the note, and Stiles the first endorser; that they were *not interested in the consideration*; that *judgment had been rendered against them, and execution issued*; and that they had *paid off said judgment and execution bona fide.* All the requirements of the act appear to be fulfilled in the facts of this case. It is just the case contemplated by the act. The counsel for plaintiff in error argues that this case is not within the act, because the payment by Eastman and Dunning was *voluntary*, and the act contemplates a *compulsory* payment. What is payment by compulsion? A payment to the sheriff after sale under the hammer? We think a levy and sale is not necessary to create a legal compulsion; but that the parties may, in the meaning of the act, be considered as *compelled to pay* when their liability is fixed by judgment, and execution has issued thereon. The constraint required is not in fact, but in law.

It is farther urged by the counsel that Eastman and Dunning paid only a part of the judgment, and therefore the case is not within the act. They paid all that was owing; a part having been paid by Stiles. Their right of control against him is limited to the amount due on the judgment at the time of the assignment. If, in a case where nothing is paid, the endorser is entitled, upon payment of the whole, to control the judgment against his prior endorser for the whole; he certainly, upon a parity of reasoning, in a case where only a part is owing, and he pays that part, is entitled to control the judgment against his prior endorser *pro tanto.*

Were the endorsers seeking rights in and through a judgment against their prior endorser, in a court of law, we should hold that they should first exhibit an order of the court from whence the execution issued, giving them the control of it. That would seem to be the highest evidence that they are entitled to the benefits of the act of 1839. But as the parties were in a court of equity, we are of opinion that there, all the benefits of that act could be, upon the hearing, extended to the endorsers, without such previous order. We cannot see, under all these views of the subject, that the court erred in declining to charge as requested on the second point; or in charging, as he did charge, as to the construction of the act of 1839.

It is claimed by the counsel for the plaintiff in error, that the act of 1839 intends to give its privileges to endorsers that are liable to each other as such at common law; that accommodation endorsers, at common law, are upon the footing of securities, and liable to contribute; that Eastman, Dunning and Stiles were, in this case, accommodation endorsers for Howard, the maker of the note; and therefore liable to contribution. In the first place, it is true, according to the record, that there was no contract or agreement between these endorsers as to their liability to each other, other than that which is made by their endorsement of the note. And it is also true, in the second place, that they endorsed for the

accommodation of the maker—neither receiving any value. The note was made by Howard, and endorsed by Stiles; and, so endorsed, taken to the bank to be discounted for the benefit of the maker, and declined by the bank; the endorsement of Eastman and Dunning being afterwards procured on the same note, it was again taken to the bank, and discounted; the money raised thereon being paid to the maker. So that these are accommodation endorsers, and the question is fairly made: Are such endorsers, at common law, bound to contribute, or are they liable as endorsers having received value? We believe they are liable as endorsers who have received value, and that the law of contribution does not apply to them. This question has frequently come under the review of the courts, and we consider it as settled. The argument in favor of the position taken by the counsel for the plaintiff in error is, that no consideration passed from the first endorser to the second, or from the second to the third, or from the third to the holder; that, according to the facts, they are securities for the maker; and neither being interested in the consideration, all ought equally to share the loss; that they are *in æquali jure.*

In the regular course of business, and according to the law of endorsed notes and bills, any subsequent endorser, who takes up a paper, can go back upon all prior endorsers, as well as the maker, for indemnification. The first endorser undertakes that the maker shall pay the note, or that he, if due diligence be used, will pay it for him; and this undertaking makes him responsible to every holder, and to every person whose name is on the note subsequent to his own, and who is compelled to pay it. This is the regular course where endorsements are for value; and applies to all endorsers in their order, no matter how numerous; each undertaking upon the credit of all the names which stand before his own. In the case before us, Stiles put his name upon the paper alone, upon the faith of the maker; and assumed, thereby, a separate and sole liability   Afterwards the other endorsers assumed their separate liability, upon the faith of his liability, as well as that of the maker: the act of endorsement is not even simultaneous, but separate and consecutive. If this note had remained in the hands of one of the subsequent endorsers, he paying for it no value, it may be conceded that he could not recover against Stiles; there is, in that event, no consideration passing between any of the parties to support such a recovery; or if one of the subsequent endorsers should transfer such a paper for value, and should be compelled to take it up, he could not, in that event, come back upon the first endorser. But neither of these contingencies has, in this case, happened. The note, as endorsed, is taken to the bank by the maker, and discounted for his bene-fit. The maker passes the note to the bank for value, and the liability of all the endorsers to the bank is the same as if they had received the value. A consideration is paid by the holder—the bank—on the credit of all the endorsers, last as well as first; and though paid to another, it is not the less a good and valid consideration. The liability of the last endorser is, on this consideration, perfect to the bank; and the liability of the previous endorsers, to him is, because of his liability to the bank, also perfect. The second and third endorsers have, in this case, taken up the debt, and paid value to the holder in virtue of their liability, created by their endorsement. If their liability is founded equally on the credit of Stiles, the first endorser, and the maker—if their undertaking, on the

credit of both, has subjected them to loss—how can the contract between them and the first endorser be said to be without consideration ? It is not without consideration. Such is the reasoning upon which this doctrine is founded ; and it seems to be well sustained, both by reason and authority.—*See Bayley on Bills,* 151, *n.* ; 9 *Pick.* 547 ; 3 *Peters'* S. C. R. 470 ; 4 *Rand.* 553 ; 18 *Martin,* 517 ; 3 *Harris & Johns.* 125 ; 7 *Johns.* 361.

The judgment of the court below must be affirmed upon all the points made in the bill of exceptions.