## EZZARD, adminstrator, *v.* BELL.

A surety whose property, under an execution against his principal and himself, has been levied upon and sold in satisfaction of the sum due the judgment creditor, "pays off and discharges" the debt of his principal, within the meaning of section 2986 of the Civil Code; and when that fact has been entered upon such execution by the officer charged with its collection, such surety is entitled to control the same for the purpose of enforcement against the principal debtor.

Argued January 7,—Decided January 21, 1897.

Levy and claim. Before Judge Lumpkin. Fulton superior court. March term, 1896.

*Robert L. Rodgers*, for plaintiff.
*Marshall J. Clarke*, contra.

ATKINSON, Justice.

An execution was issued upon a judgment rendered against a principal and his surety. It was levied upon property of the surety, which was sold, and the proceeds of the sale applied to the payment of the execution. The levy, the fact of the sale of the surety's property, and the fact of the appropriation of the proceeds to the payment of the debt of the plaintiff, were all entered by the levying officer upon the back of the execution. Subsequently the administrator upon the estate of the surety caused the execution to be levied on certain property as the property of the principal, for the purpose of reimbursing himself. To the property thus levied upon a claim was filed by a third person,

and when the claim case came on to be tried, and the surety offered in evidence the execution which was proceeding for his benefit, the claimant objected upon the ground that the execution was functus officio, it having been fully satisfied by the sale of the surety's property. The court sustained this objection, excluded the execution, and then dismissed the levy. To this ruling the surety excepted; and we are now to inquire whether this ruling of the court should be sustained.

It will be conceded, in the absence of a statutory provision to the contrary, that upon the payment by a surety of an execution against his principal, such execution becomes functus officio, and is not capable of subsequent enforcement by the surety. Section 2986 of the Civil Code is relied upon to take the present case out of the operation of the general rule. It provides that, "Any surety on the original contract, or on stay of execution, or on appeal, or in any other way, or the representative of a deceased surety, who shall have paid off or discharged the judgment or execution in whole or in part, and shall have the fact of such payment by him entered on such execution, by the plaintiff or his attorney, or the collecting officer, shall have the control of such execution, and the judgment upon which it is founded, to the same extent as if he was the original plaintiff therein, and be subrogated to all the rights of such plaintiff, for the purpose of reimbursing himself from his principal."

It was earnestly argued by the learned counsel who appeared for the defendant in error, that the section of the code above quoted could not be applied to the present case, for the reason that the words, "who shall have paid off or discharged the judgment," as employed in that section, could have application only to those persons who had *voluntarily* paid off or discharged the judgment, and could not be extended to one whose property under such execution had been appropriated to the payment of the princi-

pal's debt. In determining the true significance of these words, it will be helpful to look to the course of legislation, which found its last expression in the section of the code we have now under review.

As early as the year 1810, the General Assembly passed an act providing that when it should appear by the sheriff's return on any execution or executions that the same "has been paid" by a security or securities, it shall be the duty of the clerk to make an entry of that fact on the docket book, and that thereupon the security or securities should have the control of the execution for the purpose of reimbursement. (Cobb's Digest, p. 592.) This was followed by an act passed in the year 1826 (see Cobb's Digest, p. 593). This act provided that where a security on appeal, or for stay of execution, had subsequently thereto "paid off and discharged" the execution issuing in such case, that fact being entered upon the back of the execution by the officer executing the process, this alone entitled the surety to the use and control of the execution. The second section of the same act provided that on appeal trials judgment should be entered against the principal and surety both, but provided that if the execution against the security or securities be first "paid" by him, he should in like manner control it. So a similar provision was made in cases where one was surety on a stay of execution after judgment.

In section 5 of the same act (see Cobb's Digest, p. 594) it was provided that in all cases in which any person or persons had heretofore become security, and judgment had been rendered against him or them, and execution had been issued accordingly, in which they were able to show that they were securities only, and as such had "paid off and discharged" the execution, they were entitled to control it.

On December 26th, 1831 (see Cobb's Digest, p. 595), the General Assembly passed another act to alter and amend the act defining the liability of securities on appeal, and by which it was provided, that from and after the pas-

sage of that act should any person or persons theretofore have become security on any note, bond or other contract, and not interested in the consideration thereof, and judgment had been rendered against them and execution issued accordingly, and such security or securities had been theretofore *"compelled to pay off* such judgment or execution," in that event such security should be entitled to control the same for the purpose of remunerating himself out of the property of the principal.

In the year 1840, by an act approved December 22d, of that year (see Cobb's Digest, p. 597), the General Assembly provided, that from and immediately after the passage of that act, any security (who may be sued together with other securities) who "shall pay or discharge" any execution, should be entitled to control the same against his cosureties for contribution.

And by the act approved December 27th, 1845 (see Cobb's Digest, p. 598), it was provided, that from and immediately after the passage of that act, it shall or may be lawful for any person or persons who have heretofore become security on any note, bond or other instrument in writing and not interested in the consideration, and judgment has been rendered against them, and such security or securities have been heretofore "compelled to pay off such judgment," to control the same in as full and ample a manner as the party plaintiff could have done against his principal debtor or debtors.

So, by an act approved February 8th, 1859 (see Cobb's Digest, p. 599), it was provided, that where a surety had omitted to sign his name as such, and had also neglected to make a special defense at the trial, showing him to be a security on the original contract, and judgment had gone against him, it was still competent for such a surety who may be "compelled to pay off" the same, to control the execution for contribution. The word "compelled" is likewise used in the second section of the same act.

So the legislature, by an act approved December 14th, 1811 (see Cobb's Digest, p. 645), provided with reference to executions issued from justice's courts, that when an execution issued upon a judgment rendered in a justice's court "has been paid" by a security or securities, it should be the duty of the magistrate to enter that fact upon the docket book, and thereupon the security had the right to control the execution for the purpose of reimbursement.

By an act approved December 12th, 1816 (see Cobb's Digest, p. 648), where a judgment was rendered in a justice's court against joint obligors or promisors, if one or more of them made it to appear that they were sureties only, it was made the duty of the magistrate to enter judgment against them as such, and it was then declared that when such execution was "satisfied by such security, or out of their property," he, she or they shall have control and benefit of the execution for the purpose of reimbursement.

By an act approved December 21st, 1839 (see Cobb's Digest, p. 596), it was provided that an endorser, who should "be compelled to pay off" a judgment or execution issued against him, should be entitled to the control of the execution for the purpose of reimbursement out of his principal, provided he made it appear that he was in no way interested in the consideration of the contract upon which he became endorser.   These provisions with reference to endorsers, and those defining the rights of sureties upon judgments rendered in justice's courts, are cited merely for the purpose of showing the trend of legislative thought.

It will be seen by reference to section 2990 of the Civil Code, that, in defining the right of an endorser, it uses the same language employed in section 2986 of the Civil Code with reference to sureties, and provides that every endorser who "shall pay off and discharge" the judgment, shall be entitled to control the execution.   The General Assembly, when legislating directly upon that subject, employs the words "compelled to pay off."   We are not to presume that

the codifiers intended to change the law, or to import into the words of the General Assembly a significance not authorized by the language employed by the latter. It is fair then to presume, that when the codifiers used the expression "shall pay off or discharge," they intended that those words should have the same significance as "compelled to pay." The office of the codifier is to state the law, not to make it.

In the case of *Stiles* v. *Eastman*, 1 *Ga.* 205, this court held, where endorsers alleged that they had paid off a judgment and execution bona fide, and it appeared from the evidence that they had made a voluntary payment of them, that this voluntary payment by them was compulsory within the meaning of the statute which authorized endorsers to control executions when they had been compelled to pay off the same. If then, in that case, a voluntary payment was held to be compulsory within legal contemplation, we know of no reason why a compulsory payment should not likewise fall within the spirit of the statute now under consideration, and answer the statutory demand that the security should have first paid off the execution, whether voluntarily or not, in order to enable him to control it.

It will be noted, too, that in codifying the provisions with reference to procedure upon executions issuing from justice's courts against securities, the codifiers (Civil Code, §4158) state the law to be, that where a suit is brought against joint promisors and joint obligors, and it shall be made to appear that one or more of them are sureties only, the court shall enter up judgment accordingly, and when the execution "shall be satisfied" by such surety out of his own property or money, he shall have control of the judgment and execution for the purpose of remunerating himself out of his principal.

It will be noted that in the original act to which we have referred, it was provided that in such a case the surety should be entitled to control the execution whenever the same "was satisfied" out of his property; the code states that

he shall be entitled to control the same whenever it "is satisfied" by such security out of his own property or money. These sections of the code should be so construed as to make them harmonize with the original expression of the legislative will. It was manifest, according to the original legislation, that whenever the property of a surety was sold and the debt satisfied, in so far as the plaintiff in execution was concerned, out of the property of the surety, then the surety was entitled to control the execution against his principal. As we have seen, the General Assembly, when legislating directly upon this subject, in their earlier expressions used the words "shall pay" or "shall have been paid"; this was then followed by the stronger expression, that if the surety should have "paid or discharged" the debt, and this by the still stronger expression, if the surety shall have been "compelled to pay or discharge"; then, and in each such case, he should be entitled to control the execution for the purpose of reimbursement or contribution, as the case might have been.

A compulsory payment is none the less the payment of a debt. There is no greater reason in equity and good conscience why the surety who voluntarily pays his principal's debt should be entitled to the control of the execution for reimbursement, than why the security who has been compelled to pay the debt of his principal should likewise have control of the execution for a similar purpose. The man who has been *compelled* to pay can as well be said to *have paid off and discharged* a judgment or execution, as one who has *voluntarily* done the same thing. The sale of one's property by the sheriff in the execution of judicial process is a compulsory payment of the debt, but it is none the less effectual. It discharges the debt of the principal; and it is clear, as we look through the whole course of legislation upon this subject, that the General Assembly intended to keep alive such process for enforcement by the surety when he sought to reimburse himself out of the property

of his principal. We find nothing in the whole course of legislation upon this subject which can fairly be construed to confine the right to control executions to those sureties who had voluntarily paid the debt. The payment and discharge of the principal's liability by the surety seems to have been the great central equity upon which the legislature rested its purpose to preserve the judgments and executions which had been discharged by a surety to enable him to reimburse himself from the property of his principal. We think, therefore, the court erred in sustaining the objection taken to plaintiff's execution, and in dismissing the levy.

*Judgment reversed. All the Justices concurring; Little, J., dubitante.*