JEFFERSON COOLIDGE and others *vs.* EDWIN R. WIGGIN.

*Accommodation paper—contract implied between several indorsers of.*

Where the names of several persons appear below that of the original payee, upon the back of a negotiable promissory note, the *prima facie* presumption is that they are successive indorsers, in the order in which their names appear; but this presumption may, *inter sese*, be controlled by proof of any other contract between them, express or implied.

The mere fact, however, that the original payee, and the other indorsers, placed their names upon the note for the accommodation of the makers and to enable them to obtain a discount of the note at the bank, will not change the legal presumption, nor make the indorsement a joint one. The rule, as above stated, applies to accommodation paper the same as to that given for value between the original parties.

ON FACTS AGREED.

ASSUMPSIT upon a promissory note for $5000, dated August 31, 1866, made by Bradley, Coolidge & Rogers, payable in four months from date, at any bank in Portland, to the order of Edwin R. Wiggin, indorsed by him, by Jane M. Bradley, and by Jefferson Coolidge & Company (the plaintiffs) in the order named. On the twenty third day of November, 1865, and prior thereto, Bradley, Coolidge & Rogers, were doing business in Portland and accustomed to obtain discounts at the Cumberland National Bank on their notes, indorsed for their accommodation by Mr. Wiggin and Mrs. Bradley. Upon the day last named they presented to that bank for discount such a note for $5000, on sixty days, but it was refused, unless another name could be obtained, because the bank already held as much paper of these parties as their rule

allowed them to take. Thereupon Bradley, Coolidge & Rogers procured the plain'iffs' indorsement upon that note, they then knowing that Mr. Wiggin and Mrs. Bradley were accommodation indorsers. The note was then discounted at said bank, its avails carried, upon the books of the bank, to the account of Bradley, Coolidge & Rogers, and the note charged to that account when due, when it was provided for by a similar note, except that it was on ninety days, which was discounted, credited and charged in the same way. April 28, 1866, a third note for $5000, made by Bradley, Coolidge & Rogers, payable in one hundred and twenty days, to the order of Jane M. Bradley, indorsed by her, then by Mr. Wiggin, and then by Jefferson Coolidge & Company, was discounted at the same bank, in renewal of the other, and when this last note fell due it was renewed by the note in suit, Bradley, Coolidge & Rogers paying the discount upon each of these notes, all the parties well knowing that all this paper was for the accommodation of this firm.

Bradley, Coolidge & Rogers stopped payment on the eleventh day of December, 1866, before the note in suit matured, and it was paid January 4, 1867, by the plaintiffs, after it had been protested. The plaintiffs had also indorsed another note, of like amount, for the accommodation of Bradley, Coolidge & Rogers, held their memorandum for $500, and had exchanged notes dated October 31, 1866, on three months, for $3492.10 with that firm, all outstanding at the time of its failure; and Jefferson Coolidge & Co. had to pay the note so indorsed and the one given in exchange for that last mentioned. Upon the day after their failure, Bradley, Coolidge & Rogers conveyed to the plaintiffs certain merchandize, from which $2690 were realized, in part of their liabilities, without specifying any particular claim to be secured thereby; and Davis W. Coolidge, without the knowledge of Messrs. Bradley and Rogers, his co-partners, on the same day, took up their said note of October 31, 1866, for $3492.10, and gave instead of it a new note of that date payable on demand, in order that it might be sued, and property attached, which was done and the

proceeds of that property was applied by agreement with Davis W. Coolidge, but without the knowledge of his co-partners, towards the payment of the note so given by him, for his firm, as aforesaid. This firm existed till after December 12, 1867, when its members filed their petition in bankruptcy, but did no business, except in liquidation, after December 11, 1866. The plaintiffs did not call upon the defendant to pay this note till after the makers were discharged in bankruptcy.

The court to render judgment according to the legal rights of the parties.

*J. H. Drummond,* for the plaintiffs.

*Strout & Holmes,* for the defendant.

VIRGIN, J. On Aug. 1, 1865, the firm of Bradley, Coolidge & Rogers made their note for $5000 on four months payable to the order of the defendant, at any bank in Portland. The note was indorsed by the defendant (Wiggin), Jane M. Bradley and Jefferson Coolidge & Co., (plaintiffs), in the order named, and then, at the request of the makers, it was discounted by the Cumberland National Bank. On the last day of grace the note was duly protested by a notary public, from whose certificate it appears that the indorsers were legally notified of its dishonor.

From the order of their names on the back of the note, the law presumes that they thereby assumed the conditional liability of successive indorsers. Having thus held themselves out to the commercial world, this presumption is conclusive as to succeeding parties for value, and without notice of any other than such apparent relations. But as between themselves it is only a *prima facie* presumption, liable to be overcome by any material evidence which shall establish any actual contract, express or implied, entered into or understood by them when they became parties. *Sturtevant v. Randall,* 53 Maine, 149; *Smith v. Morrill,* 54 Maine, 48; *Clapp v. Rice,* 13 Gray, 403. And if any indorser has legally fulfilled his obligation as indorser, to whomsoever he was

thus bound, and can then establish such an agreement as between his co-parties, he may have his rights settled, *inter sese*, in accordance with the principles applicable to such agreement. Thus where a railroad company, having duly authorized their treasurer to give notes, and their president and treasurer to issue bonds as collateral security therefor, for the purpose of effecting a loan in behalf of the company, "unanimously voted" (at the same meeting) "that the officers of the company will unite their personal accountability with that of the company in the bonds and notes authorized to be negotiated in a preceding vote as the same shall become necessary, reserving to themselves the same authority over a sale of said bonds for the purpose of reimbursements which said preceding vote secures to any other holders of said bonds for the said purpose;" and notes were given by the treasurer and indorsed by the officers, one of whom paid the notes and thereupon sued the other indorsers for contribution ; Kent, J., in delivering the opinion of the court, said : "All the circumstances connected with the creation and execution of these notes show that in law and in justice, the directors of the company, whose names appear as indorsers on them, were, as between themselves, in substance co-sureties and liable to contribution. This must be the result, or each subsequent indorser would seem to be entitled to maintain an action against any prior indorser, as indorser, in case he paid the note to the holder. The whole evidence seems to negative the latter proposition. They were directors of the company and equally anxious to facilitate the operations by which money could be obtained. They indorsed the different notes without reference to the order in which the names appeared. The bonds issued for their security were held for their joint security, and were so to remain under the charge and disposition of a majority of the signers, which power was executed by a joint instrument, signed among others, by this defendant. The votes of the directors and their acts point in the same direction. It may be questioned whether the vote was so far binding that the officers could be compelled to sign the notes when requested. \* \* \* But having volunta-

rily acted in compliance with the vote, it is not unreasonable to refer to the vote as showing the actual understanding of the parties who unanimously agreed to it, as to the nature and extent of the agreement between themselves as to their joint suretyship. The exact form is not prescribed; but all of them must have understood that they were to embark in one boat, and that boat to act as a tow-boat to the somewhat heavily moving craft to which it was attached." *Smith v. Morrill*, Maine (unreported).

So, in *Talcott v. Coggswell*, 3 Day, 512, where both indorsers went and each paid a moiety, it was held sufficient evidence of their understanding that as among themselves, they were co-sureties.

As before seen, where the payee's indorsement is followed by others, all in blank, the presumption mentioned, in the absence of extrinsic controlling evidence, must govern all parties, including the indorsers themselves. And the fact that all indorse for the accommodation of the maker, and before the note goes into circulation, does not change the result. Accommodation paper is governed by the same rules in this respect as other paper. 3 Kent's Com., 86. If the last indorser has been obliged to pay the amount of the note to the holder, he may recover of any prior indorser, even if all were accommodation indorsers for the maker. *Young v. Ball*, 9 Watts, 141; *McDonald v. Magruder*, 3 Pet., 470; *Church v. Barlow*, 9 Pick., 547; *Shaw v. Knox*, 98 Mass., 214.

The remaining facts are as follows: On November 25, 1865, Bradley, Coolidge & Rogers on presenting to the bank for discount, their note of that date, for $5000 on sixty days, payable to the order of the defendant, and indorsed by him and Jane M. Bradley, were informed that for the reasons stated the bank declined to discount it unless the makers obtained another indorser; whereupon they procured the indorsement of the plaintiffs who knew the others to be accommodation indorsers; and the note was thereupon discounted and the avails carried to the bank account of the makers. The note was renewed three times in a similar manner, the third renewal being the note in suit.

In these circumstances we fail to see such evidence of an agreement of joint undertaking as will overcome the presumption of their several obligation. There is no evidence of any communication whatever between the parties in relation to their liability. If they intended to assume the liability of joint, instead of several, indorsers, they could have very readily so agreed, and the defendant could have as readily proved such agreement by his own testimony, and that of Jane M. Bradley; but he does not even vouchsafe us any evidence that he·ever so understood their relations. There being no agreement as to any joint undertaking, the plaintiffs might be willing to become third indorsers, when they might absolutely decline any proposition of suretyship.

We are aware that a different opinion has been entertained in a few courts in this country, in some early cases. But those early cases have generally been revised and corrected by the same courts who made them. For instance, in *Pitkin v. Flanagan*, 23 Vermont, 160, wherein the contrary doctrine is stated with much force; but this case would seem to be overruled in the two subsequent cases of *Farmers' & Mechanics' Bank v. Rathbone*, 26 Vermont, 19 (a leading case in Lead. Cas. on Prom. Notes, 581) and *Keith v. Goodwin*, 31 Vermont, 268. And the large current of authority is in accordance with the views presented by us in this case, the latest of which that has come to our attention is *Kirchner v. Conklin*, 40 Conn., 77.

*Judgment for the plaintiffs,*
*for the amount of the note.*

APPLETON, C. J., WALTON, DICKERSON and BARROWS, JJ., concurred.